790					445 Mass. 790 (2006)

Hershenow *v.* Enterprise Rent-A-Car Company of Boston, Inc.

BARRY HERSHENOW & another[1] *vs.* ENTERPRISE RENT-A-CAR COMPANY OF BOSTON, INC., & another.[2]

Suffolk. September 7, 2005. - January 17, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Consumer Protection Act,* Insurance, Unfair or deceptive act, Lease. *Practice, Civil,* Consumer protection case. *Motor Vehicle,* Lease agreement. *Words,* "Injury."

This court concluded that a violation of G. L. c. 90, § 32E ½, the statute regulating collision damage waivers in private passenger automobile rental agreements, could be enforced in a private action under G. L. c. 93A. [795-797]

In an action brought by plaintiff consumers pursuant to G. L. c. 93A, § 9 (1), alleging that the terms of the collision damage waivers in the defendants' private passenger automobile rental agreements failed to comply with the requirements of G. L. c. 90, § 32E ½, the judge did not err in granting summary judgment in favor of the defendants, where the plaintiffs failed to satisfy the causation requirement of the "injury" provision of § 9 (1), by demonstrating a causal connection between the defendants' deception and the plaintiffs' loss. [797-802] COWIN, J., concurring. GREANEY, J., dissenting, with whom SPINA, J., joined.

CIVIL ACTION commenced in the Superior Court Department on January 6, 2003.

The case was heard by *Allan van Gestel,* J., on motions for judgment on the pleadings and for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John Roddy* (*Elizabeth A. Ryan* with him) for the plaintiffs.

*Michael A. Kahn,* of California (*M. Kay Martin,* of California, & *John H. Henn* with him) for the defendants.

The following submitted briefs for amici curiae:

*Ben Robbins & Andrew Grainger* for New England Legal Foundation.

[1]Dana Beaumier.

[2]Enterprise Rent-A-Car Company.

*Stephen D. Poss & S. Jason P. Baletsa* for The Hertz Corporation & another.

MARSHALL, C.J. We consider in this case whether two consumers who rented motor vehicles from the defendants, Enterprise Rent-A-Car Company of Boston, Inc., and Enterprise Rent-A-Car Company (collectively Enterprise), have stated a claim under G. L. c. 93A, § 9 (1), which permits an action by any person who has been "injured" by another's unfair or deceptive act or practice. The rental customers contend that the collision damage waiver provision (CDW) in Enterprise's form rental contract violated G. L. c. 93A, because its terms failed to comply with the requirements of G. L. c. 90, § 32E ½, which regulates collision damage waivers in private passenger automobile rental agreements.[3] In the alternative, the plaintiffs argue that the CDW was sufficiently unfair or deceptive as to violate Chapter 93A, irrespective of § 32E ½.

We conclude that, because the CDW did not cause the plaintiffs to suffer any loss, they have failed to satisfy the causation requirement of the "injury" provision of G. L. c. 93A, § 9 (1); proving a causal connection between a deceptive act and a loss to the consumer is an essential predicate for recovery under our consumer protection statute. We affirm the order of a judge in the Superior Court granting summary judgment for the defendants, albeit for different reasons.[4]

1. *Facts.* The essential facts are not disputed. Enterprise is a national consumer automobile rental company. On February 3, 2001, Barry Hershenow entered into a contract for a one-day rental of a motor vehicle at Enterprise's West Newton branch.

---

[3]General Laws c. 90, § 32E ½, inserted by St. 1990, c. 440, § 1, mandates, inter alia, certain disclosures to consumers who are offered a collision damage waiver (CDW) by a private passenger automobile rental company. For example, § 32E ½ (B) (1) provides that any CDW must notify consumers that their personal automobile insurance may already cover damage to a rental car. The statute also limits exclusion from the protection of a CDW to eight specific circumstances. § 32E ½ (C) (5). The statute provides for punishment of any violation by fines and for the assessment of civil penalties "in an action brought on behalf of the commonwealth." § 32E ½ (D).

[4]We acknowledge the amicus briefs filed by the New England Legal Foundation and jointly by Hertz Corporation and Avis Rent A Car System, Inc.

The rental charge was $14.99.[5] Hershenow purchased optional collision damage waiver protection for an additional $14.99. In general terms, when a customer purchases CDW, the rental company agrees to waive claims against the customer for any damage to the car during the rental period. Hershenow admits that his rental automobile was not involved in a collision nor otherwise damaged during the rental period.

On July 13, 2001, Dana Beaumier rented an automobile for three days at Enterprise's Somerville branch. The rental charge was $80. Beaumier too opted for CDW protection, at an additional cost to her of $47.97. Beaumier also admits that the automobile she rented was not damaged during the rental period.

Enterprise's preprinted form contracts contained numerous specific restrictions on the use of the vehicles.[6] The collision damage waiver provision provided in pertinent part:

> "If Owner offers and Renter agrees to pay an additional fee for DAMAGE WAIVER, renter is relieved of any deductible on renter's policy, and an additional amount, the total of renter's deductible and the additional amount will not exceed $1,000.00 . . . . Damage Waiver does not apply if the car is stolen, or if renter or driver fails to or refuses to make a report of damages to police or other lawful authorities, or to cover tire chain damages. *A violation of any provision of this agreement invalidates Damage Waiver*" (emphasis added).

Pursuant to this last sentence, a violation of any provision of the Enterprise rental contract would purportedly cancel the CDW. This provision is contrary to the requirements of G. L. c. 90, § 32E ½, which permits rental companies to cancel

---

[5]The record contains no explanation as to how Enterprise calculated its rental charges.

[6]Relevant restrictions included the following:

"13. VIOLATIONS OF THE CONTRACT. A violation of the contract shall exist if the car is used or driven:

"(a) In violation of any term or condition of this agreement. . . . (f) Outside the state of rental without written consent of Owner. . . . (h) If renter or driver leaves the car unlocked or fails to secure the keys. (i) Other than [on] a paved public highway, private road or driveway. . . . (j) In a reckless or imprudent manner . . . . (k) Or if renter misrepresents facts to Owner pertaining to rental, use, or operation of the car."

445 Mass. 790 (2006) 793

Hershenow *v.* Enterprise Rent-A-Car Company of Boston, Inc.

CDW only as specifically listed in the statute. See § 32E ¹/₂ (C) (5).[7] Additionally, as applied to the CDW, many restrictions that Enterprise imposed on the use of its vehicles were inconsistent with other provisions of § 32E ¹/₂. For example, § 32E ¹/₂ (C) (5) (*e*), permits CDW exclusion for damage incurred while an authorized driver "is driving outside the United States or Canada, unless expressly authorized in the rental agreement," but Enterprise's form contract provided for exclusion if the vehicle was driven outside Massachusetts without Enterprise's written consent. See note 6, *supra*, (subsection [*f*]).[8] Enterprise characterizes its contract provisions that are contrary to the Massachusetts statute as a "mistake."

On November 21, 2001, the plaintiffs wrote to Enterprise pursuant to G. L. c. 93A, § 9, on their own behalf and on behalf of a class of other Massachusetts renters whom they sought to represent.[9] The letter demanded that Enterprise cease including the "illegal" CDW exclusions in future rental contracts, cease relying on those exclusions to deny CDW protection, and refund all CDW payments to each purported class member, with interest. Enterprise responded that the contracts complied with G. L. c. 90, § 32E ¹/₂. It nonetheless agreed to modify its rental agreements and remove the challenged language that a "violation of any provision of this agreement invalidates Damage Waiver." They noted that the automobiles at issue had sustained no damage. Thus, asserted Enterprise, even if its CDW provision contained impermissible exclusions, "the only customers who could have been injured would have been those who dam-

---

[7]General Laws c. 90, § 32E ¹/₂ (C) (5), provides that "only the following may be excluded from the protection of the [CDW]," and then lists eight specific exclusions, e.g., "damage or loss caused intentionally, willfully or wantonly by an authorized driver."

[8]Enterprise's agreement did not comply with the requirements of G. L. c. 90, § 32E ¹/₂, in other respects, including: Enterprise's form contract invalidated CDW if, at any time during the rental period, the renter failed to lock the automobile's doors or drove on an unpaved road. The Enterprise contract also invalidated CDW if the automobile was driven in an "imprudent" manner. See note 6, *supra*. None of these circumstances is within the statutorily permitted exclusions to CDW. See § 32E ¹/₂ (C)(5).

[9]The plaintiffs sought to represent all individuals renting automobiles from Enterprise in Massachusetts who purchased CDW using the same form rental contract that governed the two individual plaintiffs, and who did not "file claims" because their rental cars were returned undamaged. The judge took no action on the motion for class certification.

aged the rented cars and against whom Enterprise refused to waive its claims based on a reason not allowed [under Massachusetts law]."

On November 21, 2001, the plaintiffs also filed this action in the Superior Court. Before the issue of class certification was addressed, Enterprise moved for judgment on the pleadings and for summary judgment. Mass. R. Civ. P. 12 (c), 365 Mass. 754 (1974). Mass. R. Civ. P. 56, 365 Mass. 824 (1974). The plaintiffs also moved for summary judgment. A judge in the Superior Court ruled in favor of Enterprise on both motions, and judgment entered on August 6, 2003.[10] The judge concluded that no private right of action exists under G. L. c. 90, § 32E ½, and that there is no right to bring a separate action for any violation of that statute under G. L. c. 93A. He entered judgment on the pleadings for the defendants. The judge also entered summary judgment for the defendants "because there is no claim for private right of action under [G. L. c. 90, § 32E ½] or under [G. L. c. 93A]," noting that he was not ruling "on the merits of the motion." The plaintiffs appealed. We transferred the case here on our own motion.

2. *Discussion.* As noted, the Superior Court judge did not rule "on the merits" of Enterprise's motion for summary judgment. The judge did not, however, exclude any of the evidence submitted by Enterprise in support of the motion that was beyond the pleadings, and the amended judgment states that the judge considered the pleadings, depositions, answers to interrogatories, admissions, and affidavits. We therefore consider the entire record on appeal. Mass. R. Civ. P. 12 (c). We will sustain the judge's ruling entering judgment for Enterprise if it is sound on any ground established in the record. *Aetna Cas. & Sur. Co.* v. *Continental Cas. Co.*, 413 Mass. 730, 734-735 (1992).

The plaintiffs here advance two theories for recovery under G. L. c. 93A, § 9. First, they argue that Enterprise's violation of G. L. c. 90, § 32E ½, constituted a "per se" violation of G. L. c. 93A, § 9. In support of this argument, they point to 940

---

[10]An amended judgment entered on March 10, 2004. The amended judgment explicitly identifies both named defendants, but is otherwise unchanged in all relevant aspects from the original judgment.

Code Mass. Regs. § 3.16 (3) (1993), which provides that an act or practice is a violation of § 2 of G. L. c. 93A, if it fails to comply with consumer protection statutes, rules, regulations, or laws.[11] Second, they contend that Enterprise's CDW was "unfair and deceptive" within the meaning of G. L. c. 93A, independent of any noncompliance with G. L. c. 90, § 32E ½.[12]

Before we turn to the plaintiffs' arguments, we address the defendants' predicate argument that a violation of G. L. c. 90, § 32E ½, may not be enforced in a private action under G. L. c. 93A.[13] The defendants maintain that, because G. L. c. 90, § 32E ½ (E), provides for civil fines and a public enforcement action brought by the Commonwealth, private relief for violations of that statute is not available. The plaintiffs counter that the absence of a private remedy in § 32E ½ does not demonstrate a legislative intent to preclude consumer claims under G. L. c. 93A, and that the two statutes form a "complementary," rather than an "irreconcilable," scheme.

We do not perceive a conflict between the two statutory schemes, nor do we perceive any clearly expressed legislative intent that G. L. c. 90, § 32E ½, displace entirely any existing private remedies for deceptive practices concerning collision damage waivers in private passenger automobile rental agreements. Section 32E ½ was enacted in 1990, one year after a report by the National Association of Attorneys General (NAAG) detailed nationwide "abuses" in the car rental industry, including the industry's use of "high pressure sales tactics" to

---

[11]Title 940 Code Mass. Regs. § 3.16 (3) (1993), states in pertinent part:

"[A]n act or practice is a violation of [G. L. c.] 93A, [§ ] 2, if: . . . (3) It fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth . . . intended to provide the consumers of this Commonwealth with protection . . . ."

[12]On appeal, the plaintiffs concede that they do not assert any claims directly under G. L. c. 90, § 32E ½, "because it contains no private remedies." Any claim under § 32E ½ itself is therefore waived. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975). See *Sullivan* v. *Liberty Mut. Ins. Co.*, 444 Mass. 34, 35 n.1 (2005).

[13]In *Roberts* v. *Enterprise Rent-A-Car Co. of Boston, Inc.*, 438 Mass. 187, 191 n.8 (2002), we noted that it was unnecessary in that case to reach the issue "whether G. L. c. 90, § 32E ½, contains a private right of action and, if not, whether by logical extension, the Legislature has precluded a claim under G. L. c. 93A for the same behavior."

persuade consumers to purchase collision damage waivers. See Final Report and Recommendations of the National Association of Attorneys General Task Force on the Car Rental Industry Advertising and Practices, 56 Antitrust & Trade Reg. Rep. S-1, S-3, S-5, S-15 (Special Supp. Mar. 16, 1989). NAAG reported that some rental companies had sold damage waivers that were "so unreasonably restricted as to be worthless," and that "[c]ar rental contracts [were] not a useful source of information on either the extent of the consumer's liability or CDW." *Id.* at S-14. NAAG recommended that State Legislatures enact statutes to address these abuses. The Massachusetts Legislature promptly did so.[14] These events lead us to conclude that the Legislature's intent was to supplement, not curtail, existing consumer protections.

We infer that the absence of a private right of action in the 1990 legislation "stemmed from the Legislature's knowledge that such a consumer right of action already existed pursuant to [G. L.] c. 93A, § 9, rather than from a desire to bar such actions." *Dodd* v. *Commercial Union Ins. Co.*, 373 Mass. 72, 77 (1977) (G. L. c. 176D, which prohibits unfair or deceptive acts in the insurance industry, did not exclude application of G. L. c. 93A). See *Ciardi* v. *F. Hoffmann-La Roche, Ltd.*, 436 Mass. 53 (2002) (Antitrust Act, G. L. c. 93, §§ 1-14A, did not infringe on scope of G. L. c. 93A). Contrast *Cabot Corp.* v. *Baddour*, 394 Mass. 720, 722-723, 725 (1985) (Uniform Securities Act intended to provide comprehensive regulation of securities field, and distinguishing *Dodd* v. *Commercial Union Ins. Co., supra*, where absence of private actions established that insurance field not comprehensively regulated); *Reiter Oldsmobile, Inc.* v. *Gen-*

---

[14]Initially, the 1990 Legislature considered two bills, 1990 House Doc. No. 3272 and 1990 House Doc. No. 3273. The former would have required every motor vehicle rental agreement containing a CDW to include a notice informing customers that the CDW coverage may duplicate coverage provided by their own automobile insurance, and would have further required the Commissioner of Insurance to preapprove the form of each motor vehicle rental contract containing a CDW. 1990 House Doc. No. 3273 would have permitted a rental car company to hold a customer liable for damages to a rental vehicle only in specifically enumerated instances. A substitute bill, 1990 Senate Doc. No. 1885, which modified and combined aspects of both previous bills, was passed by the Legislature in December, 1990, and signed by the Governor on December 28, 1990. St. 1990, c. 440.

*eral Motors Corp.*, 378 Mass. 707, 711 (1979) (G. L. c. 93B, which addresses unfairness in dealings in the automotive industry, provided specific private remedies for violation, so no relief available under G. L. c. 93A). The enactment of G. L. c. 90, § 32E ½, does not foreclose the availability of remedies under G. L. c. 93A.

Having considered the applicability of G. L. c. 93A, we turn now to the plaintiffs' claims, and consider first whether they have been "injured" within the meaning of G. L. c. 93A, § 9 (1). This court has consistently recognized that, to warrant an award of damages under G. L. c. 93A, there must be a "causal connection between the seller's deception and the buyer's loss." *Kohl* v. *Silver Lake Motors, Inc.*, 369 Mass. 795, 801 (1976). See *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 695-696 (1975) (G. L. c. 93A, § 9, permits action by one who suffers loss "as a result of" unfair or deceptive act). The requirement of a causal connection between deception and loss was not affected by 1979 legislative changes to G. L. c. 93A, which we shall now describe.

In 1975, this court held that G. L. c. 93A, § 9, then in effect, required a plaintiff to prove a loss of "money" or "property," holding that a claim of severe emotional distress was not actionable under the statute.[15] *Baldassari* v. *Public Fin. Trust*, 369 Mass. 33, 44-46 (1975) (*Baldassari*). Two years later, the court ruled that G. L. c. 93A, § 9, permitted only those in privity with an insurer to bring a claim under the statute. *Dodd* v. *Commercial Union Ins. Co.*, *supra* at 79-81. In reaction to those two holdings, the Legislature amended G. L. c. 93A, § 9 (1), as appearing in St. 1979, c. 406, § 1, to provide for a private right of action to any person "who has been injured by another person's use or employment of any method, act or practice declared to be unlawful [under G. L. c. 93A]." See *Hopkins* v. *Liberty Mut. Ins. Co.*, 434 Mass. 556, 565 n.12 (2001) (1979 amendment was, in part, legislative response to *Dodd* v. *Commercial Union*

_____

[15]General Laws c. 93A, § 9 (1), as amended through St. 1978, c. 478, § 45, provided in relevant part: "Any person who purchases or leases goods, services or property, real or personal, primarily for personal, family or household purposes and thereby suffers any loss of *money or property* [as a result of] an unfair or deceptive act or practice . . . may . . . bring an action . . . for damages" (emphasis added).

*Ins. Co., supra*); *Leardi* v. *Brown*, 394 Mass. 151, 158 (1985) (*Leardi*) (1979 amendment was, in part, legislative response to *Baldassari*).[16]

The relevant 1979 amendments thus clarified that the Legislature intended to permit recovery when an unfair or deceptive act caused a personal injury loss such as emotional distress, even if the consumer lost no "money" or "property." See, e.g., *Haddad* v. *Gonzalez*, 410 Mass. 855, 865-866 (1991) (following 1979 amendment to G. L. c. 93A, § 9, severe emotional stress was cognizable loss); *Maillet* v. *ATF-Davidson Co.*, 407 Mass. 185, 192 (1990) (following 1979 amendment, § 9 applicable to product liability cases involving personal injury). Nothing in the statutory language or the legislative history suggests that the 1979 amendments eliminated or altered the requirement of a causal connection to a loss. See *Kohl* v. *Silver Lake Motors, Inc., supra*; *Slaney* v. *Westwood Auto, Inc., supra* at 698. See also Greaney, Consumer Protection Law, 65 Mass. L. Rev. 88, 89 (1980) ("Despite the breadth of the [1979] amendment, some limitation will occur by the requirement that the plaintiff still establish causation"). We have recently reaffirmed that, in enacting and then amending G. L. c. 93A, § 9, the Legislature intended that "causation is a required element of a successful G. L. c. 93A claim." *Aspinall* v. *Philip Morris Cos.*, 442 Mass. 381, 401 (2004).

The plaintiffs do not directly address the issue of causation, arguing simply that under *Leardi, any* misrepresentation of legal rights in a consumer contract is a "per se injury" and that no more is needed to establish injury under G. L. c. 93A, § 9. We disagree. A misrepresentation of legal rights in a consumer contract may indeed be per se "unfair" or "deceptive" under § 2 of G. L. c. 93A. See 940 Code Mass. Regs. § 3.16 (3).[17] But a plaintiff seeking a remedy under G. L. c. 93A, § 9, must demonstrate that even a per se deception caused a loss. *Leardi*

---

[16]The legislative history of the 1979 amendment includes a notation from the Governor's Chief Legal Counsel that the statutory change "allows for mental suffering in 93A cases," an obvious reference to *Baldassari* v. *Public Fin. Trust*, 369 Mass. 33 (1975) (*Baldassari*).

[17]As noted earlier, the plaintiffs rely on 940 Code Mass. Regs. § 3.16 (3), which defines unfair or deceptive acts or practices and provides that an act that "fails to comply with" existing consumer protection statutes, rules,

is not to the contrary, as we shall explain.[18]

As previously discussed, in the wake of the 1979 amendments to G. L. c. 93A, and the legislative overruling of *Baldassari*, it was abundantly clear that a person was "injured" under G. L. c. 93A, § 9, when an unfair or deceptive act caused loss of money, loss of property, or personal injury. Then in *Leardi*, this court considered whether, in light of the 1979 amendment, the term "injury" now encompassed another form of loss, "the invasion of any legally protected interest of another." *Id.* at 159, quoting Restatement (Second) of Torts § 7 (1965). (The court specifically noted that *Leardi* was an appeal that "involves the interpretation of a recent amendment to G. L. c. 93A." *Id.* at 152.) In that case, a residential landlord had included statutorily noncompliant provisions in standard apartment leases with his residential tenants. The terms of the lease misled the tenants as to the landlord's statutory obligation to maintain the premises in habitable condition. *Id.* at 156-158. For example, the lease terms provided that the rented premises "shall be conclusively presumed" to be in "good, tenantable order" unless the tenant notified the landlord of any unlawful conditions within two days of occupancy. *Id.* at 157. That provision was contrary to the State sanitary code. The court concluded that the statutorily noncompliant leases could be the basis for injury under G. L. c. 93A. *Id.* at 158-160.[19]

*Leardi* thus established that, in the wake of the 1979 amend-

regulations, or laws is a "violation" of G. L. c. 93A, § 2. See note 11, *supra*. Their reliance is misplaced. Our decision today is entirely consistent with that regulation. An act that violates a consumer statute may be per se deceptive under G. L. c. 93A, § 2, as the regulation implies. That does not make it per se an injury under G. L. c. 93A, § 9, as the plaintiffs argue.

[18]The plaintiffs apparently assume that the availability of statutory damages in the amount of twenty-five dollars, see G. L. c. 93A, § 9 (3), in lieu of actual damages, eliminates the need to prove a loss resulting from a defendant's deceptive conduct. The statutory damage provision does not supplant the requirement to prove causation under § 9. It merely eliminates the need to quantify an amount of actual damages if the plaintiff can establish a cognizable loss caused by a deceptive act. See, e.g., *Ciardi* v. *Hoffman-La Roche, Ltd.*, 436 Mass. 53, 66-67 n.20 (2002) ("To the extent that the plaintiff is able to prevail on the issue of liability but is unable to prove actual damages, the Legislature has decided that she is entitled to a specified remedy").

[19]By describing the facts at issue in *Leardi* v. *Brown*, 394 Mass. 151, 158 (1988) (*Leardi*), we do not suggest that the holding of that case is limited to

ment to G. L. c. 93A, § 9, a claim of "injury" now encompassed "the invasion of any legally protected interest of another," *id.* at 159, just as it now encompassed severe emotional stress, see *Haddad* v. *Gonzalez, supra*, or personal injury, see *Maillet* v. *ATF-Davidson Co., supra.* What *Leardi* did not do was to eliminate the required causal connection between the deceptive act and an adverse consequence or loss. In *Leardi*, the requisite causal connection was established: confronted by unhabitable conditions, the illegal lease terms would deter tenants from exercising their legal rights on pain of loss of their tenancy. Stated differently, the illegal lease terms acted as a powerful obstacle to a tenant's exercise of his legal rights. If a tenant challenged unhabitable conditions by withholding rent, for example, he faced immediate eviction. The mere existence of statutorily prohibited lease provisions placed all tenants in a worse and untenable position than they would have been had the leases complied with the requirements of Massachusetts law.[20]

In marked contrast, the statutorily noncompliant terms in Enterprise's automobile rental contracts did not and could not deter the plaintiffs from asserting any legal rights. Nor did the plaintiffs experience any other claimed economic or noneconomic loss. The CDW made neither rental customer worse off

landlord-tenant actions. See *post* n.4 (Greaney, J., dissenting).

[20]In *Leardi, supra*, the tenants conceded that "no member of the class had ever read, and that the landlord had never attempted to enforce, the offending portions of the lease." *Id.* at 154. The court noted that the question "is a close one," but concluded that, "in light of all the circumstances," the tenant class had been "injured" within the meaning of G. L. c. 93A, § 9. *Id.* at 159.

"Causation" is not, of course, the same as "reliance" and the latter is not an essential element of a G. L. c. 93A claim. See, e.g., *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 693-697 (1975). In that case the plaintiff alleged that an automobile dealership failed to disclose various defects in the automobile it had sold to him and to honor its promise to repair the defects. Distinguishing the G. L. c. 93A cause of action from a common-law action for deceit and fraud, the court noted that, in a G. L. c. 93A action, "proof of actual reliance by the plaintiff on a representation is not required." *Id.* at 703. See also *Heller Fin.* v. *Insurance Co. of N. Am.*, 410 Mass. 400, 409 (1991) (while G. L. c. 93A plaintiff "need not show actual reliance on the representation, the evidence must warrant a finding that a causal relationship existed between the misrepresentation and the injury"). In *Leardi*, the plaintiffs did not show actual reliance on the unlawful contract terms; they did however demonstrate the requisite causation.

during the rental period than he or she would have been had the CDW complied in full with the requirements of G. L. c. 90, § 32E 1/2.[21] Assuming that the Enterprise CDW was per se unfair and *deceptive* because it did not comply with § 32E 1/2, see 940 Code Mass. Regs. § 3.16 (3), the plaintiffs have nevertheless failed to establish that the "per se" deception caused a loss. For that reason, there can be no recovery under G. L. c. 93A, § 9 (1).

The absence of any causal connection between the deception and any loss readily distinguishes this case from *Aspinall* v. *Philip Morris Cos.*, *supra*, our most recent consideration of the "injury" aspect of G. L. c. 93A. There, deceptive advertising to the contrary, the members of the plaintiff class purchased "light" cigarettes that, in most instances, delivered as much or more tar and nicotine as regular cigarettes. *Id.* at 402. As the deceptive advertising "could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted," causation was established. *Id.* at 394, quoting *Purity Supreme, Inc.* v. *Attorney Gen.*, 380 Mass. 762, 777 (1980) (citations omitted).

Under the plaintiffs' theory of "injury," any consumer contract, oral or written, that violates the requirement of law in any respect, i.e., is noncompliant with any statute, rule regulation or court decision, automatically constitutes an "injury" under G. L. c. 93A (is an injury per se) entitling the plaintiff to recover statutory damages, attorney's fees, and costs, even though the plaintiff cannot demonstrate that the illegal contract (the invasion of a legally protected interest) causes any loss. There is nothing to suggest that the Legislature ever intended such a result,[22] it is contrary to the regulation promulgated by

---

[21]We reject the dissent's assertion that the CDW purchased by these plaintiffs was "illusory." *Post* at 807. There is nothing to suggest that the unlawful language contained in the Enterprise rental contract influenced or affected the renters in any way. The plaintiffs did not demonstrate that Enterprise ever sought recovery for damage to their rental vehicles or any other vehicle rented in Massachusetts. Any concern that the plaintiffs were misled into failing to assert their statutory rights is speculative at best, and premature.

[22]The dissent posits that the Legislature's silence in the wake of *Leardi, supra*, implies that "injury" under G. L. c. 93A, § 9, denotes an invasion of

the Attorney General, see note 11, *supra,* and this court has never sanctioned that view.

Every consumer is, of course, entitled to the full protection of law. If any person invades a consumer's legally protected interests, and if that invasion causes the consumer a loss — whether that loss be economic or noneconomic — the consumer is entitled to redress under our consumer protection statute. A consumer is not, however, entitled to redress under G. L. c. 93A, where no loss has occurred. To permit otherwise is irreconcilable with the express language of G. L. c. 93A, § 9, and our earlier case law.

The judge's amended order granting summary judgment for the defendants is affirmed.

*So ordered.*

Cowin, J. (concurring). I agree with the court that private action pursuant to G. L. c. 93A, § 9, requires proof of a causal connection between a deceptive act and injury to a consumer. *Ante* at 797. The plaintiffs in the present case have not offered proof of an injury. Private action pursuant to § 9 is thus not available. "The statutory language, when clear and unambiguous, must be given its ordinary meaning." *Bronstein* v. *Prudential Ins. Co.*, 390 Mass. 701, 704 (1984).

I write separately because the court fails to overrule expressly the contrary holding of *Leardi* v. *Brown*, 394 Mass. 151, 152 (1985) (*Leardi*). In the *Leardi* case, a fact situation similar to that in today's case yielded an opposite result. Insofar as the court suggests today that *Leardi, supra,* remains a viable precedent, *ante* at 798-800, its opinion can only engender confusion among those who rely on our decisions for guidance. I believe the time has arrived to put the *Leardi* decision to rest.

every legally protected interest in the absence of any ascertainable loss or actual injury. *Post* at 810. The Legislature's silence more likely reflects its agreement with the consumer protection regulations promulgated at that time by the Attorney General: an act that violates a consumer statute is per se deceptive under G. L. c. 93A, § 2. That does not make it per se an injury under G. L. c. 93A, § 9. See 940 Code Mass. Regs. § 3.16 (3); note 17, *supra.*

The problem with *Leardi, supra,* was its determination that the plaintiffs suffered an injury cognizable under G. L. c. 93A, § 9, although the harm they suffered was wholly speculative and abstract. The *Leardi* court described this supposed injury as an "invasion of any legally protected interest of another," *Leardi, supra* at 159, quoting Restatement (Second) of Torts § 7 (1965), but to the extent this phrase has any meaning at all, it does not comport with the injury requirement of § 9. None of the plaintiff tenants in the *Leardi* case suffered harm as harm is traditionally understood. They lost no money or other benefit, and they made no complaint with respect to the conditions of their apartments. *Id.* at 153-154. Recovery for plaintiffs such as those in the *Leardi* case was not contemplated by § 9, the purpose of which was to allow recovery to consumers who have actually been injured by an unlawful trade practice.

Today, the court seeks to preserve the status of the *Leardi* decision by distinguishing it from the instant case on two grounds. First, the court suggests that the circumstances of the cases differ in their potential for injury to the respective plaintiffs. The court states that in the present case, the "statutorily noncompliant terms in Enterprise's automobile rental contracts . . . could not deter the plaintiffs from asserting any legal rights." *Ante* at 800. This is true in a limited sense. Certain speculative events must first occur before the plaintiffs could assert their rights: the rental vehicles must have been damaged and Enterprise must have inappropriately sought recovery pursuant to the unlawful provision.[1] *Ante* at 793-794. In contrast, in the earlier *Leardi* case, the court suggests today that the deterrent effect of the deceptive apartment lease provisions at issue actually "misled the tenants as to the landlord's statutory obligation to maintain the premises in a habitable condition." *Ante* at 799.

However, despite the court's suggestion otherwise, the salient facts of the cases are quite similar. In neither case did the plaintiffs show they had occasion to exercise the rights that were negated by the deceptive practices of the defendants. The two necessary preconditions for injury in the instant case have

---

[1] Of course, there was no showing that either event actually did occur or was likely to occur.

been described. In the *Leardi* case, the plaintiffs would have had no occasion to enforce their relevant rights unless their apartments were unsanitary or unhabitable and the landlord failed to honor the pertinent statutory obligations. *Id.* at 154, 156-157 (noting tenants conceded landlord never attempted to enforce offending portions of lease). See *ante* at 799-800 & n.20. In other words, the plaintiffs in both cases showed that contractual arrangements violated their statutory rights, and, in both cases, the applicability of the unlawful provisions was speculative and uncertain.

The court's effort to distinguish the cases seems to me to arise not so much from analytical conviction but from a desire to avoid acknowledging that *Leardi* was wrongly decided. It also, unfortunately, might be read to revive a tenuous distinction regarding the nature of events that might give rise to claims by plaintiffs, specifically, the passive failure by the defendant in *Leardi*, *supra*, to do what was necessary to comply with habitability requirements versus an active effort by Enterprise to recover damages from the renter of a vehicle. However, we have disfavored artificial distinctions between action and inaction in the past. See, e.g., *Whitney* v. *Worcester*, 373 Mass. 208, 221 (1977) (abandoning "misfeasance-nonfeasance distinction as a relevant factor" in determining municipal immunity because it lacked "real connection with sound reasoning or policy").

A second distinction made by the court is also unpersuasive: the *Leardi* case involved misleading apartment lease provisions that would have "acted as a powerful obstacle to a tenant's exercise of his legal rights." *Ante* at 800. By contrast, the court suggests, with respect to the present case, that Enterprise's contract language was not as serious a deterrent to the exercise of the legal rights of these plaintiffs. *Id.*

Several problems are apparent with this subtle reasoning. Section 9 does not distinguish for purposes of recovery between injuries that are serious in nature ("powerful obstacle[s] to . . . [the] exercise of . . . legal rights") and injuries that are less serious. Generally, any actual harm from a deceptive business practice within the meaning of G. L. c. 93A, § 2, will confer private rights pursuant to § 9. See *ante* at n.20. Furthermore,

even if § 9 did recognize such a difference, it is not present in the comparison of these cases. The threat created by the improper *Leardi* lease provisions was their tendency to deceive tenants as to their lawful rights. See *Leardi, supra* at 156 (lease provision "clearly tends to deceive tenants"). The same is true here. The possibility that the provisions in the *Leardi* case would have tended also to intimidate tenants from asserting their rights, as suggested today by the court, *ante* at 799-800, was, perhaps, a secondary concern. However, in this respect the cases are similar also. In the present case, the prospect of protracted and potentially ruinously expensive litigation against a large organization such as Enterprise for the purpose of determining allocation of damages would present a formidable deterrent to a typical consumer who sought to enforce statutory rights. In any event, this entire line of inquiry into the magnitude of the potential injury is unworkable. Reliance on an examination that is so vague and wholly subjective seems inadvisable.

With today's decision, the case law pertaining to the elements of an action under G. L. c. 93A, § 9, becomes unnecessarily confused. To the extent that today's decision and the *Leardi* case can be reconciled at all, they appear to stand for the proposition that private action may accrue from an unlawful business practice where the practice causes only a speculative, theoretical "invasion of a legally protected interest," except that such an invasion does not occur if it is contingent on affirmative, and not passive, conduct, or if the potential effect of the invasion is not "powerful" in the court's view. There will inevitably follow more litigation that will generate additional distinctions without differences. The truth is that today *Leardi* v. *Brown, supra,* has been overruled as it should be, but sub silentio. While he disagrees with the outcome, Justice Greaney, in his dissent, makes the same observation. *Post* at 810.

Stare decisis alone will not obviate the need to admit that the accumulation of experience has proved an earlier holding to be ill advised. "No court is infallible . . . ." *Stonehill College* v. *Massachusetts Comm'n Against Discrimination*, 441 Mass. 549, 562 (2004). There are myriad opinions where we have over-

ruled earlier decisions after concluding that the holding on an issue is no longer correct.[2]

*Leardi* v. *Brown, supra,* should also be expressly overruled. Its holding diverged markedly from the language of § 9, which plainly requires a showing of injury as we have traditionally understood the concept: proof that the plaintiff has, in fact, been harmed. The Legislature never intended § 9 to allow a plaintiff who has not been adversely affected to recover nominal damages leading to attorney's fees that may eclipse that damage award many times over. See, e.g., *Lord* v. *Commercial Union Ins. Co.,* 60 Mass. App. Ct. 309, 313-314 (2004) (reviewing nominal damage award of $25 that resulted in further award of $9,000 in attorney's fees and $2,170 in litigation costs). The *Leardi* decision itself acknowledged that § 9 did not authorize "vicarious suits by self-constituted private attorneys-general," *Leardi* v. *Brown, supra* at 161, quoting *Baldassari* v. *Public Fin. Trust,* 369 Mass. 33, 46 (1975). Thus, for the reasons stated, while I am convinced that the court's decision today is correct,

---

[2]Some of our more recent decisions overruling previous holdings are as follows: *Commonwealth* v. *Cong Duc Le,* 444 Mass. 431, 432 (2005) (eyewitness identification), overruling in part *Commonwealth* v. *Daye,* 393 Mass. 55, 60-63 (1984); *Knott* v. *Racicot,* 442 Mass. 314, 322-323 (2004) (sealed contract doctrine), overruling *Johnson* v. *Norton Hous. Auth.,* 375 Mass. 192, 195 (1978); *Callahan* v. *First Congregational Church of Haverhill,* 441 Mass. 699, 708-709 (2004) (congregational church autonomy under Massachusetts law), overruling *Antioch Temple, Inc.* v. *Parekh,* 383 Mass. 854, 864, 868 (1981); *Stonehill College* v. *Massachusetts Comm'n Against Discrimination,* 441 Mass. 549, 562 (2004) (proceeding under G. L. c. 151B, § 5), overruling *Lavelle* v. *Massachusetts Comm'n Against Discrimination,* 426 Mass. 332 (1997); *Wynn & Wynn, P.C.* v. *Massachusetts Comm'n Against Discrimination,* 431 Mass. 655, 669-670 n.29 (2000) (burdens for mixed-motive discrimination claims under G. L. c. 151B), overruling *Trustees of Forbes Library* v. *Labor Relations Comm'n,* 384 Mass. 559, 565-566 (1981); *Jean W.* v. *Commonwealth,* 414 Mass. 496, 499 (1993) (Liacos, C.J., concurring) (abolishing tort public duty rule), overruling *Dinsky* v. *Framingham,* 386 Mass. 801, 810 (1982); *Tamerlane Corp.* v. *Warwick Ins. Co.,* 412 Mass. 486, 489 (1992) (effective date of notice of cancellation of insurance), overruling *Corey* v. *National Ben Franklin Fire Ins. Co.,* 284 Mass. 283, 286-287 (1933); *Powers* v. *Wilkinson,* 399 Mass. 650, 661-662 (1987) (interpretation of "issue"), overruling *Fiduciary Trust Co.* v. *Mishou,* 321 Mass. 615, 635 (1947); *Commonwealth* v. *Crocker,* 384 Mass. 353, 359, 361 (1981) (uttering is not lesser included offense of larceny), overruling *Commonwealth* v. *Catania,* 377 Mass. 186, 191 (1979); *Franklin* v. *Albert,* 381 Mass. 611, 617-620 (1980) (tort discovery rule), overruling *Pasquale* v. *Chandler,* 350 Mass. 450, 458 (1966).

I respectfully must decline to join so much of the opinion as fails to overrule expressly the holding of *Leardi* v. *Brown.*

GREANEY, J. (dissenting, with whom Spina, J., joins). We have before us an agreement, drafted and used by the defendant, a national car rental company, which contains restrictions on collision damage waivers (CDWs) sold to its customers that are patently in violation of G. L. c. 90, § 32E ½, and, as a result, in violation of G. L. c. 93A, §§ 2 (*a*) and 9. Despite the defendant's efforts to characterize the unfair and deceptive provisions as a "mistake," the provisions were inserted, apparently intentionally, to cancel, in defined circumstances, the right of a purchaser of a CDW to recover on its protection, if an accident occurred while the purchaser was lawfully using the rental vehicle. For this nonprotection, the defendant received a steady stream of income, pocketing an extra $14.99 (or more) a day from customers, such as the plaintiffs, who purchased CDWs that were illusory and void. The defendant's conduct represents the precise kind of double dealing and trickery prohibited by G. L. c. 90, § 32E ½, and G. L. c. 93A. The plaintiffs are entitled to pursue their action. The court's conclusion that no "injury" exists nullifies a major purpose of G. L. c. 93A, and grants carte blanche to businesses, like the defendant, to prey on unsophisticated consumers as they pocket unearned charges. I, therefore, dissent.[1]

The Legislature intended G. L. c. 93A to be "a statute of broad impact which creates new substantive rights and provides new procedural devices for the enforcement of those rights." *Ciardi* v. *F. Hoffmann-LaRoche, Ltd.,* 436 Mass. 53, 58 (2002), quoting *Linthicum* v. *Archambault,* 379 Mass. 381, 383 (1979). This court has repeatedly recognized that, in amending the statutory requirement of injury in the wake of *Baldassari* v. *Public Fin. Trust,* 369 Mass. 33 (1975), the Legislature "substantially broadened the class of persons who could maintain actions under G. L. c. 93A, § 9." *Leardi* v. *Brown,* 394 Mass. 151, 158-159 (1985) (*Leardi*), quoting *Van Dyke* v. *St. Paul Fire & Marine Ins. Co.,* 388 Mass. 671, 675 (1983).

---

[1] I agree with the court's analysis of the preemption issue. *Ante* at 795-797.

After careful consideration of the 1979 amendments, the *Leardi* court construed the term "injury," in the context of G. L. c. 93A, to denote "an invasion of a legally protected interest." See *Leardi, supra* at 160. The defining principle of that case is that a plaintiff need not demonstrate an ascertainable loss of money or property, or suffer actual personal injury, in order to recover under G. L. c. 93A. In *Leardi*, and again in *Aspinall* v. *Philip Morris Cos.*, 442 Mass. 381 (2004), we broadly declared that it is enough that a consumer has been wronged in a discernible way. See *id.* at 401; *Leardi, supra.* See also *Herman* v. *Home Depot*, 436 Mass. 210, 211-212, 216 (2002) (implicitly agreeing with conclusion of District Court judge that plaintiff had suffered "invasion of a legally protected interest" when Home Depot violated item pricing regulation). The court today retreats from those declarations.

The court's failure to recognize the "injury" suffered by the plaintiffs misapprehends what occurred here. The express terms of the rental agreements misrepresented the plaintiffs' rights to use the rental vehicles in ways that were permitted by law.[2] The plaintiffs paid additional daily charges for illusory CDW protection. In the plainest terms, the plaintiffs paid money to the defendants to buy nothing of value and, moreover, were unlawfully restricted to limited use of the vehicles. The suggestion that the plaintiffs are "self-constituted private attorneys

---

[2]Enterprise submitted affidavits stating that it never relied on statutorily prohibited exclusions to deny a customer CDW protection, and asserted at oral argument that "the record is undisputed" that Enterprise enforces only those exclusions that the law allows. This assertion is not accurate. In their memorandum in opposition to Enterprise's motion for summary judgment, the plaintiffs cited to three separate actions in New York and New Jersey where Enterprise subsidiaries were determined to have pursued renters for damages in circumvention of the law, see *ELRAC, Inc.* v. *Britto*, 341 N.J. Super. 400 (2001); *ELRAC, Inc.* v. *Giordano*, 177 Misc. 2d 545 (N.Y. Sup. Ct. 1998); *ELRAC, Inc.* v. *Hughes*, 186 Misc. 2d 67 (N.Y. County Ct. 2000), and to a complaint filed, in May, 2000, by the Attorney General of New York, alleging Enterprise's failure to provide minimum coverage required by State law through the use of illegal contractual language. The plaintiffs stated in their memorandum: "The pattern of Enterprise's behavior is disturbing, and its chutzpah in representing to this court that it has found religion, at least in Massachusetts, astounding. Its affidavits about its enforcement practices cannot be given credence in light of its duplicitous history, certainly not without providing [the plaintiffs] an opportunity for discovery to test those affidavits."

general" is way off the mark.[3] *Ante* at 806. It is undisputed that Enterprise imposed objectively false and statutorily prohibited terms into the rental agreements purchased by the plaintiffs. The efforts of the court to distinguish *Leardi* are transparently feeble.[4] I agree with that part of the separate opinion of Justice Cowin which states that there is no meaningful way that this case can be distinguished from *Leardi*, and that the substance of the

---

[3]That now familiar phrase was used for the first time by this court in *Baldassari* v. *Public Fin. Trust*, 369 Mass. 33 (1975), to explain G. L. c. 93A's requirement at the time that a plaintiff suffer loss of money or property. See *id.* at 46, quoting Rice, New Private Remedies for Consumers: The Amendment of Chapter 93A, 54 Mass. L.Q. 307, 314 (1969). The quotation reads in its entirety:

> "According to the principal draftsman of G. L. c. 93A, § 9, the 'sole purpose' of the requirement that the plaintiff suffer loss of money or property 'is to guard against vicarious suits by self-constituted private attorneys general when they spot an apparently deceiving advertisement in the newspaper, on television or in a store window.' "

*Baldassari* v. *Public Fin. Trust, supra.*

It was repeated, as a caution, in *Leardi* v. *Brown*, 394 Mass. 151 (1985) (*Leardi*), lest that court's broad interpretation of the 1979 amendments be misunderstood to do away with G. L. c. 93A's "injury" requirement altogether. The court then made the following pronouncement:

> "One could hardly characterize the relationship of these plaintiffs [in *Leardi*] to the illegal lease at issue here as vicarious. We need not, and do not, decide whether we would reach a similar result under G. L. c. 93A, § 9, in other circumstances. . . . Here, the plaintiffs are tenants of the defendants, and the illegality of the defendants' lease is the subject of the instant c. 93A action." (Citation omitted.)

*Id.* at 161.

Viewed in context, the *Leardi* court's use of the term "self-constituted private attorney[]-general" can only be understood to mean someone who recognizes what may be a questionable commercial practice in the marketplace, but, as a bystander who did not participate in the transaction, was completely unaffected by any unfair conduct. The plaintiffs, who purchased CDWs from the defendants that were admittedly unlawful, cannot fairly be said to fall within this category.

[4]In concluding today that an illegal consumer contract (the invasion of a legally protected interest) cannot constitute an injury under G. L. c. 93A unless a plaintiff demonstrates an ascertainable loss, the court appears to limit the reach of the *Leardi* holding to the circumstances of that case. *Ante* at 799-800. This is surprising. We recently held to the contrary. See *Aspinall* v. *Philip Morris Cos.*, 442 Mass. 381, 401 (2004).

injury in this case and in *Leardi* are, for all legal purposes, the same. Further, the Legislature presumably is aware of *Leardi* and, in the twenty years since that case was decided, it has not indicated any intent to modify the "injury" requirement of the statute to limit the requirement in the way the court has done today. The Legislature, as noted above, acted promptly to change G. L. c. 93A in response to the *Baldassari* decision. The Legislature's quick action there, and its lack of action after *Leardi*, is some indication that the *Leardi* facts, and, a fortiori, what occurred here, present discernible injuries within the meaning of the redefinition enacted by the Legislature.

Now that the court has effectively set aside the principles stated in the *Leardi* and *Aspinall* cases, companies will be insulated against liability for certain types of consumer fraud that are patently unfair or deceptive. General Laws c. 93A will be unavailable as a remedy to those aggrieved by, for example, repeated and unwanted telephone calls; the failure to provide disclosures mandated by law; or (as here) the sale of products accompanied by contractual provisions that are unlawful or limit the use of the product. The list could go and on. Unless the unfair or deceptive conduct results in monetary loss beyond the loss that occurred here, or personal injury, the conduct may be unconscionable, but an aggrieved plaintiff will be unable to satisfy the heightened "injury" requirement the court today reads into the statute. The court's result is a defeat for Massachusetts consumers and a major victory for businesses that choose to cheat them.