Leibensperger, Edward P., J.
In this certified class action, pending since 1998 and scheduled for trial on October 19, 2015, defendant, Philip Morris USA, Inc. (“PM”), moves for summary judgment on the theory that plaintiffs cannot prove injury or damages. The motion is based, in part, on the anticipated allowance of PM’s separate motion to exclude the testimony of plaintiffs’ damages experts. For the reasons stated below, both motions are DENIED.
BACKGROUND
The background of this case is recited in numerous rulings of the court and in the decision of the Supreme Judicial Court (“SJC”) in Aspinall v. Philip Morris Companies, Inc., 442 Mass 381 (2004) (“Aspinall"). Suffice to say that plaintiffs allege that PM violated the Massachusetts Consumer Protection Act, G.L.c. 93A, by using the terms “Lights” and “lowered tar and nicotine” on the packaging of Marlboro Lights. Plaintiffs claim that such representations, and the implicit representation that Lights were less harmful to the health of a smoker than a “full flavored” cigarette, including a regular Marlboro cigarette (Marlboro Reds), were knowingly and intentionally false and deceptive when made. Plaintiffs say they will offer evidence to show that Lights were no safer than regulars or Reds and were likely even more dangerous. PM denies any deception but concedes that it is an issue for trial.
In Aspinall, the SJC affirmed a certification of a class of plaintiffs who were consumers of Lights.[2] Essential to such certification was a finding that plaintiffs’ claims satisfied the requirements of G.L.c. 93A, §9(2) for proceeding as a class action; namely, that “the unfair or deceptive act or practice has caused a similar injuiy to numerous other persons similarly situated.” The class was expressly limited to injuries that were common to the class and did not rely upon proof by individual consumers. Aspinall at 392. The SJC discussed two theories upon which plaintiffs might recover for a similar or common injuiy: (1) the “difference between the price paid by the consumers and the true market value of the ‘misrepresented’ cigarettes they actually received,” As-pinall at 399 (the “benefit of the bargain” damages), and (2) statutory damages of $25. With respect to the latter, the SJC stated “[i]n the event that the plaintiffs are unsuccessful in their attempt to prove actual damages, however, they will be entitled to recover statutoiy damages under G.L.c. 93A, §9(3) (’if the court finds for the petitioner, recoveiy shall be in the amount of actual damages or twenty-five dollars, whichever is greater’).” Aspinall at 400.
PM now moves for summary judgment arguing that based on subsequent decisions of the SJC concerning what constitutes proof of compensable “injuiy” under c. 93A, plaintiffs are not entitled to recover even the nominal statutoiy damages. In addition, because plaintiffs’ experts’ testimony regarding the calculation of benefit of the bargain damages should be excluded pursuant to the court’s “gate keeper” function under §702 of the Mass. Guide to Evidence, PM says that plaintiffs are unable to prove actual damages. As a result, plaintiffs’ case should be dismissed.
ANALYSIS
I. Recoveiy of Statutoiy Damages
Analysis of PM’s arguments against the potential recoveiy of statutoiy damages must start with what the SJC said in this veiy case. While PM contends that cases decided after Aspinall have refined, if not changed completely, the inteipretation of what constitutes a com-pensable injuiy under c. 93A, the fact remains that Aspinall has not been overruled or expressly modified.
Relying on Leardi v. Brown, 394 Mass. 151, 160 (1985), the SJC held in Aspinall that if deceptive advertising is proved “a per se injuiy on consumers *199 who purchased the cigarettes represented to be lower in tar and nicotine” has occurred. Aspinall at 402. As a result, “all will be entitled to statutory damages, without regard to whether the plaintiffs are successful in establishing that consumers were overcharged for the deceptively advertised cigarettes.” Id. Moreover, the SJC recognized that there was more than a per se injury alleged in this case. Assuming proof that there was a representation that Lights were safer than Reds or regulars, and that a reasonable consumer was deceived by that representation, the consumer received, in fact, a less safe product than advertised. “[CJonsumers of Marlboro Lights were injured when they purchased a product that when used as directed, exposed them to substantial and inherent health risks that were not (as a reasonable consumer likely could have been misled into believing) minimized by their choice of the defendant’s ‘light’ cigarettes.” Aspinall at 397. A less safe product is, logically, worth less than a safer one. “Logic . . . suggests that, all other things being equal, a truly low tar and nicotine cigarette would have economic worth greater than a comparable regular cigarette, due to the added value of an inherently ‘safer’ cigarette.” Aspinall at 400. That injury occurs without individual inquiry to determine each class member’s smoking behavior. Aspinall at 397.
The thrust of PM’s argument is that in 2013, the SJC distanced itself from the Leardi decision relied upon by the SJC in Aspinall In Leardi, the SJ C stated that “under circumstances where there has been an invasion of a legally protected interest, but no harm for which actual damages can be awarded, we conclude that the statute provides for the recovery of minimum damages in the amount of $25.” Leardi, 394 Mass, at 160. In Tyler v. Michaels Stores, Inc., 464 Mass. 492, 503 (2013), the Court held that “[t]o the extent that the quoted passage from Leardi can be read to signify that ‘invasion’ of a consumer plaintiffs established legal right in a manner that qualifies as an unfair or deceptive act under G.L.c. 93A, §2, automatically entitles the plaintiff to at least nominal damages (and attorney’s fees), we do not follow the Leardi decision.” PM contends that this clarification of the law means that what the SJ C said in Aspinall about these plaintiffs’ ability to recover statutory damages must not be followed and applied.
PM misconstrues the developments in the line of cases after Aspinall. It relies, principally, on Hershenow v. Enterprise Rent-A-Car Co. of Boston, 445 Mass. 790, 801-02 (2006), and Tyler, cited supra, decided in 2013 for its arguments. Neither case changes the result forecast by the SJC when it decided Aspinall
As stated by the SJC in Rhodes v. AIG Domestic Claims, Inc., 461 Mass. 486, 496-97 (2012), it is erroneous to contend that Hershenow was a change to c. 93A jurisprudence. Instead, “Hershenow reaffirms the established principle that to recover under c. 93A, §9, a plaintiff must prove causation—that is, the plaintiff is required to prove that the defendant’s unfair or deceptive act caused an adverse consequence or loss.” Id. at 496. Indeed, in Hershenow, 445 Mass, at 798, the court cited Aspinall as “recently reafBrm[ing]” that causation is a required element of a successful c. 93A claim. The Court went further to describe how Hershenow (where plaintiffs completed a transaction suffering no injury from the alleged deception) was different from Aspinall (where plaintiffs alleged the purchase of cigarettes less safe than advertised). “As the deceptive advertising [in AspinalU ‘could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted,’ causation was established.” Id. at 801, citing Aspinall at 777. Given that language, it is specious to argue that Hershenow overruled or changed the result in Aspinall
PM contends, however, that the 2013 decision in Tyler imparted further clarification that should cause this court to depart from the conclusions of the SJC in Aspinall I disagree. Tyler reemphasized that a c. 93A plaintiff must prove causation, that is, “some kind of separate, identifiable harm arising from the violation itself.” Tyler, 464 Mass, at 503. While the Court clarified that a deceptive act does not “automatically” entitle a plaintiff to relief (and that language in Leardi that might suggest same should not be followed), id., it nowhere suggested that the causation alleged in Aspinall was insufficient under this test. This is not surprising given the express finding by the Court in Hershenow that in Aspinall causation “was established.” If anything, the discussion in Tyler may assist plaintiffs here if they are unable to prove actual damages with reasonable certainty through their experts. It was noted that plaintiffs in Tyler would be entitled to recover statutory damages even though plaintiffs could not prove “a readily quantifiable loss of money or property or measurable emotional distress.” Tyler, 464 Mass, at 504, n. 20. The injury alleged by the Tyler plaintiffs as caused by the deceptive act (an invasion of privacy) was, nevertheless, “harm worth more than a penny.” Id. Thus, the Tyler plaintiffs could recover statutory damages.
In 2014, the SJC addressed again the required proof in order to recover under c. 93A. Bellermann v. Fitchburg Gas & Electric Light Co., 470 Mass. 43 (2014). Citing Aspinall as good authority, the Court stated “[w]here a defendant’s unfair or deceptive conduct causes customers to receive a product or service worth less than the one for which the customers paid, the customers may pursue a class action under G.L.c. 93A to recover the amount by which they overpaid.” Id. at 54, n. 10. Bellermann also cited as good authority Iannacchino v. Ford Motor Co., 451 Mass. 623, 630 (2008), where the SJC rejected an argument that Hershenow barred c. 93A recovery. A claim by plaintiffs in Iannacchino that the cars they purchased were less safe than was represented or required by safety standards “would support a cause of action under G.L.c. 93A, §9.” Id.
A claim that the product purchased was less safe than the product advertised is exactly what is asserted *200 by plaintiffs here. If proved, plaintiffs have suffered a separate, identifiable harm arising directly from the alleged unfair or deceptive acts. That the less safe product actually received has a true market value less than the product ás advertised is a reasonable inference.[3] Thus, harm of at least a penny may be inferred. Accordingly, PM’s motion for summary judgment seeking to dismiss the case is denied.
II. Recovery of Benefit of the Bargain Damages
Whether, upon proof of unfair or deceptive acts, plaintiffs can recover more than statutory damages, i.e., actual damages, depends on sufficient proof. In Aspinall, the SJC approved as “appropriate in this case” plaintiffs’ model for measuring actual damages—the “difference between the price paid by the consumers and the true market value of the ‘misrepresented]’ cigarettes they actually received.” Aspinall at 399. The model was described as a variation on the traditional benefit of the bargain rule. Plaintiffs are required to prove actual damages in accordance with this model “with reasonable certainty.” Id.
Proof of the “true market value” of the misrepresented cigarettes actually received will be difficult. Plaintiffs must prove the market value of a hypothetical product because during the class period there did not exist a product known as Marlboro Lights with full disclosure that the cigarettes were no safer than regular cigarettes. There is no market price for a hypothetical product. The fact that Marlboro Reds or regulars sold for the same price as Lights is not dispositive. “|T]he appropriate comparison is between the value of the represented product and the value of the received product" Pearson v. Philip Morris, Inc., 306 P.3d 665, 684 (Or.Ct.App. 2013) (emphasis in original) (holding that price of a third product, Marlboro regulars, is not determinative). The “true market value” of the hypothetical product must be proved by scientific evidence that is reasonably reliable and non-speculative showing what the “true market value” of the product would have been during the class period. As stated at the hearing, I am skeptical regarding the plaintiffs’ ability to prove the quantity, as opposed to the existence of some amount (a penny?), of their harm.
Plaintiffs’ proof of their actual damages model depends entirely upon the expert testimony of Dr. J. Michael Dennis and Dr. Jeffrey E. Harris. Following discovery in this case, including depositions of the experts, PM moves to exclude the expert testimony on actual damages on the ground that the proposed expert testimony is unreliable as a matter of law.[4] Mass.G.Evid. §702; Commonwealth v. Lanigan, 419 Mass. 15, 25-26 (1994). If successful, plaintiffs would be left with their claim for statutory damages, only.
PM proposes that I exercise my role as the “gate keeper” for the admissibility of the experts’ testimony based upon the written discovery record submitted with the motion to exclude. “An evidentiary hearing is not always necessary to comply with Commonwealth v. Lanigan. . .” Mass.G.Evid. §702, Note, Hearing. But it is prudent for the trial judge to conduct an eviden-tiary hearing where there may be evolving or unusual theories or methods utilized by the experts. Id. In the present case there are two additional reasons why hearing the experts’ evidence before deciding the issue of reliability makes sense. First, the trial of this case will be jury waived so the evidentiary hearing can be combined with the trial. Dr. Harris, at least, will be an expert witness at trial regardless of my ultimate conclusion with respect to the admissibility of his testimony on actual damages because he is plaintiffs’ expert on other, unchallenged by motion, subjects. Second, the methodology of Drs. Harris and Dennis with respect to proof of actual damages has been the subject of challenges in other Marlboro Lights cases. In some cases the methodology has been rejected (e.g., McLaughlin v. American Tobacco Co., 522 F.3d 215, 229 (2d Cir. 2008)), and in some cases it has been accepted (e.g., Price v. Philip Morris Inc., No. 00-L-112 (Ill.Cir.Ct. 2003)). It seems prudent to have a full evidentiary record available for both my initial evaluation as well as any review by an appellate court. Finally, without prejudging the question of whether the experts’ methodology satisfies the reliability standard for admission into evidence, I note that many of PM’s criticisms of the experts’ reports go to the weight rather that to the admissibility of the evidence.
CONCLUSION
For the reasons stated, PM’s Motion for Summary Judgment (Paper No. 183) and Motion to Exclude the Expert Testimony of J. Michael Dennis and Jeffrey E. Harris (Paper No. 184) are DENIED.

 he definition of the class has been refined to Massachusetts residents and residents of surrounding states who regularly purchased Marlboro Lights in Massachusetts during the period 1994 to 1998.

 “Logic . . . suggests that, all other things being equal, a truly low tar and nicotine cigarette would have an economic worth greater than a comparable regular cigarette, due to the added value of an Inherently ‘safer’ cigarette.” Aspinall at 400.

 PM also objects to Dr. Harris’s expert testimony on the ground that it does not “fit” the measure of damages articulated in Aspinall In his deposition, Dr. Harris was asked whether he determined what “true market value of Marlboro Lights would have been during the class period if there had been no—none of the misrepresentations that are alleged to have occurred had been made?” His answer was “No, I did not.” I reviewed Dr. Harris’s expert report and the cited deposition testimony. I am persuaded that, in fact, Dr. Harris does have opinions that fit the SJC’s measure of actual damages.