MARK CASAVANT & another[1] *vs.* NORWEGIAN CRUISE
LINE, LTD.

No. 08-P-2102.

Worcester. September 16, 2009. - December 31, 2009.

Present: DUFFLY, MILLS, & MEADE, JJ.

Further appellate review granted, 456 Mass. 1106 (2010).

*Consumer Protection Act,* Unfair or deceptive act, Damages. *Administrative
Law,* Regulations. *Attorney General. Practice, Civil,* Attorney's fees,
Costs.

At the trial of a civil action, a Superior Court judge erred in entering judg-
ment for the defendant cruise line on the plaintiffs' claim under G. L. c.
93A, where the defendant did not disclose the complete terms of its refund
policy to the plaintiffs until approximately two years after accepting pay-
ment from the plaintiffs, conduct that violated the relevant regulations of
the Attorney General and, in turn, constituted an unfair or deceptive act or
practice within the meaning of G. L. c. 93A [76-77]; further, the judge er-
roneously concluded that the plaintiffs had not established a causal connec-
tion between the alleged unfair or deceptive act or practice and their loss,
where the plaintiffs' three separate refund requests, made prior to the
departure date of their cruise, demonstrated that the plaintiffs would have
objected to a provision in the contract of passage with the defendant in
order to obtain a full refund under the undisclosed refund policy [77-78];
therefore, this court remanded the case for determination of the plaintiffs'
damages, reasonable attorney's fees, and costs pursuant to G. L. c. 93A
[79].


CIVIL ACTION commenced in the Superior Court Department on
October 3, 2002.

Following review by this court, 63 Mass. App. Ct. 785 (2005),
the case was heard by *Bruce R. Henry,* J.

*John D. Deacon, Jr.,* for the plaintiffs.

*Armand P. Mele,* of New York, for the defendant.

MILLS, J. In the first round of this action brought by the plain-
tiffs, Mark and Tara Casavant, seeking a refund for their tickets

---

[1]Tara Casavant.

and G. L. c. 93A damages against Norwegian Cruise Line, Ltd. (Norwegian), a judge entered judgment for Norwegian dismissing the Casavants' complaint on the grounds of a forum selection clause set forth in the "Contract of Passage." This court reversed in *Casavant* v. *Norwegian Cruise Line, Ltd.*, 63 Mass. App. Ct. 785 (2005) (*Casavant I*), holding that the forum selection clause was unenforceable because the Casavants had not accepted the terms of the contract of passage. The case was remanded for trial on whether the Casavants were entitled to a full refund as well as for determination of their c. 93A claim. After trial on remand, a different judge found that Norwegian had not committed an unfair or deceptive act or practice within the meaning of c. 93A. He further found that even if there had been an unfair or deceptive act, the Casavants had not suffered any loss as a result of such act. The judge accordingly entered judgment for Norwegian on the c. 93A claim, and ordered Norwegian to tender a full refund to the Casavants for the purchase price of their tickets, plus statutory interest and costs.[2] The Casavants appeal from the c. 93A judgment against them. Because we conclude that the Casavants have, as matter of law, demonstrated a c. 93A violation and that this violation caused them a loss, we reverse and remand.

*Background.*[3] In October, 2000, the Casavants booked a round-trip ocean cruise between Boston and Bermuda. The booking took place at a travel agency operating within the discount department store, BJ's. The departure was scheduled for September 16, 2001 (five days after the terrorist attacks on the World Trade Center in New York City). The price for the tickets was $2,017.50. At the time of booking, the Casavants paid a deposit of $628. Subsequently, they tendered the remaining balance such that the tickets and fees were fully paid by July 18, 2001.

When they booked the cruise, the Casavants received a "Passenger Invoice and Confirmation," which stated, in a section entitled "Cancellation Fees," that a fifty percent forfeiture would be imposed for cancellation fifteen to twenty-nine days prior to departure, and a one hundred percent forfeiture would be

---

[2]In the joint pretrial memorandum filed by the parties in June, 2006, Norwegian offered a full refund of the price of the tickets to the Casavants.

[3]We incorporate by reference the comprehensive narrative of facts in *Casavant I, supra* at 785-788. We highlight facts that are pertinent to our discussion.

imposed for cancellation from zero to fourteen days prior to departure.[4] The Casavants also received documents entitled "Travel Information and Service Agreement" detailing refund policies that were completely separate from anything discussed by the parties.

On or about August 27, 2001, Norwegian sent "Passenger Ticket Contracts" to the Casavants, who received them in early September, 2001. The passenger ticket contracts included the tickets and a contract of passage containing twenty-eight numbered paragraphs. Paragraph two provides, in relevant part:

> "[Norwegian] shall not be liable to make any refund to passenger in respect of lost tickets or in respect of tickets wholly or partly not used by a passenger."

Another paragraph sought to limit Norwegian's liability for injury or loss due to "terrorist[] actions or threats [or] hijacking."

At all relevant times, Norwegian had an additional refund and cancellation policy in force that was not included in any of the initial materials the Casavants received when purchasing their tickets at BJ's, nor was it contained in the twenty-eight paragraphs of fine print in the contract of passage. That policy appears to have been first disclosed in Norwegian's response to the Casavants' G. L. c. 93A demand letter.[5] In Norwegian's response letter, dated September 26, 2002, Norwegian's attorney referred to a policy that provides "passengers with a 100% refund if they have an objection to a provision in the Passenger Ticket Contract." This policy was reiterated in the affidavit of Jane E. Kilgour, manager of the passenger and crew claims department for Norwegian, dated October 29, 2002 (Kilgour affidavit), and filed by Norwegian in support of its motion to dismiss the Casavants' initial complaint.[6] Paragraph ten of the Kilgour affidavit provides, in relevant part:

> "At all times relevant, it was, and remains, the policy of [Norwegian] to refund in full the fare paid by a passenger,

---

[4]We need not resolve whether Norwegian authorized this cancellation policy.

[5]The Casavants' attorney made a written demand for damages under c. 93A in a letter dated August 22, 2002.

[6]The motion to dismiss and the Kilgour affidavit were filed on December 3, 2002.

without penalty, if that passenger wishes to cancel a cruise because of an objection to a provision contained in the Contract of Passage before the cruise in question begins."

After the tragic events of September 11, 2001, the Casavants cancelled their cruise. Prior to the scheduled departure date of the cruise, they made three separate requests for a refund of their ticket prices. Norwegian declined to issue a refund.

*Discussion.* The issue before us is whether the nondisclosure of the complete terms of the refund policy, as articulated by Norwegian's response to the Casavants' G. L. c. 93A demand letter and the Kilgour affidavit, constituted an unfair or deceptive act or practice within the meaning of c. 93A, and, if so, whether that nondisclosure caused the Casavants any loss.

Section 9 of G. L. c. 93A provides a private cause of action for individual consumers who suffer an injury as a result of unfair or deceptive acts or practices. See *Hershenow* v. *Enterprise Rent-A-Car Co. of Boston, Inc.*, 445 Mass. 790, 796 (2006) (*Hershenow*). The purpose of c. 93A is to provide "proper disclosure of information and a more equitable balance in the relationship of consumers to persons conducting business activities." *Purity Supreme, Inc.* v. *Attorney Gen.*, 380 Mass. 762, 776 (1980) (*Purity Supreme*), quoting from *Lowell Gas. Co.* v. *Attorney Gen.*, 377 Mass. 37, 51 (1979). A successful claim under this section thus requires, at a minimum, a showing of (1) a deceptive act or practice on the part of the seller; (2) an injury or loss suffered by the consumer; and (3) a causal connection between the seller's deceptive act or practice and the consumer's injury. See G. L. c. 93A, § 9. See also *Hershenow, supra* at 797.

1. *Unfair or deceptive act or practice.* Although G. L. c. 93A does not define what acts and practices are unfair or deceptive, § 2(c) of c. 93A specifically authorizes the Attorney General to promulgate regulations making these determinations. See *Purity Supreme, supra* at 775. The relevant Attorney General's regulations prohibited Norwegian from accepting any payment until after disclosure to the Casavants of "the complete terms of any cancellation or refund policy of [Norwegian] that may apply to the consumer's purchase of travel services." 940 Code Mass. Regs. § 15.04(2)(e) (1996). In this case, the unambiguous refund policy referred to in Norwegian's response to the Casavants'

c. 93A demand letter, as well as in the Kilgour affidavit, was not disclosed until the fall of 2002, more than one year after the scheduled date of the cruise, and more than two years after Norwegian accepted initial payment from the Casavants. That is, contrary to the Attorney General's regulations, Norwegian did not disclose its true refund policy until approximately two years after accepting payment from the Casavants.

The trial judge found that Norwegian's refund policy described above did not apply because "[t]he Casavants had no objection to the terms of the Passenger Ticket Contract; they simply did not feel comfortable taking a cruise at that time," and that Norwegian "did not commit an unfair or deceptive act by not refunding the ticket price to the Casavants under this policy." This reasoning is incorrect. The proper inquiry is whether Norwegian violated the Attorney General's regulations, which required Norwegian to furnish its refund policy to the Casavants prior to accepting payment. As discussed above, Norwegian failed to do so, and thus its conduct violated the Attorney General's regulations which, in turn, constituted an unfair or deceptive practice within the meaning of c. 93A. See 940 Code Mass. Regs. § 15.01(1) (1996) ("[v]iolation of any provision of 940 CMR 15.00 shall be an unfair or deceptive act or practice under [G. L. c. 93A, § 2(*a*)]").

2. *Causation.* "To warrant an award of damages under G. L. c. 93A, there must be a 'casual connection between the seller's deception and the buyer's loss.' " *Hershenow, supra* at 797, quoting from *Kohl* v. *Silver Lake Motors, Inc.,* 369 Mass. 795, 801 (1976). Causation is established if the deception "could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted."[7] *Hershenow, supra* at 801, quoting from *Purity Supreme, supra* at 777.

Causation can also be established by determining whether the nondisclosure was of a material fact. In the context of c. 93A claims based on nondisclosure, "[m]ateriality . . . is in a sense

[7]The court in *Hershenow, supra* at 801, quoting from *Purity Supreme, supra* at 777, concluded that "causation was established" in its earlier decision in *Aspinall* v. *Philip Morris Cos.,* 442 Mass. 381, 394 (2006), because "deceptive [cigarette] advertising 'could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted.' "

a proxy for causation." Gilleran, The Law of Chapter 93A § 4.16, at 185-186 (2d ed. 2007) (noting that this view is supported by the court's definition of deception in *Lowell Gas Co.* v. *Attorney Gen.*, 377 Mass. at 51). See *Sheehy* v. *Lipton Indus., Inc.*, 24 Mass. App. Ct. 188, 195 (1987). To determine if the nondisclosure was of a material fact, we ask whether the plaintiff likely would have acted differently but for the nondisclosure. See *Brewster Wallcovering Co.* v. *Blue Mountain Wallcoverings, Inc.*, 68 Mass. App. Ct. 582, 607 n.57 (2007) ("[f]ailure to disclose a material fact that causes a party to act differently with respect to a transaction than it otherwise would have has been held sufficient to support a finding of c. 93A liability").

In this case, instead of deciding whether the Casavants would have behaved differently if Norwegian had timely disclosed its true refund policy, the trial judge simply concluded, incorrectly, that there was an absence of causation because "there was never an objection by the Casavants to [the] cancellation policies."

While a remand is often necessary when a judge applies the improper legal standard, we conclude that in the circumstances presented here, a remand on this issue is neither practical nor necessary. The Casavants' three separate requests for a refund, which were made prior to the departure date of the cruise, demonstrate that they would have objected to a provision in the contract of passage in order to obtain a full refund pursuant to Norwegian's undisclosed refund policy.[8] To find otherwise would be clearly erroneous. See *Casavant I, supra* at 798 (Norwegian's argument that the Casavants failed to object to the contract of passage was "unavailing and, indeed, borders on the ephemeral — the Casavants' repeated requests to reschedule the cruise and their reasons set forth in [an earlier letter to Norwegian] were sufficient objection").[9]

---

[8]We do not suggest that ticket holders may make disingenuous objections, or manufacture objections in bad faith, in order to vitiate a binding contract. The contract in this case has been deemed unenforceable, see *Casavant I, supra* at 799, and the record consistently reflects good faith on the part of the Casavants.

[9]Additionally, it would be clearly erroneous to find, had the Casavants been aware of Norwegian's true refund policy, that they would not have objected to the purported contract term limiting Norwegian's liability for "terrorist[] actions or threats." The trial judge found that the Casavants cancelled the cruise due to their legitimate fears following the events of September 11, 2001.

3. *Damages.* In order for an individual plaintiff to recover under G. L. c. 93A, § 9, he or she need not demonstrate loss of money or property. *Hershenow, supra* at 797-800. Severe emotional distress, or invasion of a legally protected interest, can constitute an "injury" under G. L. c. 93A, § 9. *Id.* at 798-800. In this case, Norwegian did not agree to refund the ticket price until at least four years after the departure date of the cruise. During this time, the Casavants endured litigation that required them to expend considerable time, money, and effort. The case is remanded for a determination of the Casavants' c. 93A damages, reasonable attorney's fees, and costs. See G. L. c. 93A, § 9(4).

*Appellate fees and costs.* The Casavants have requested, and are entitled to, their reasonable appellate attorney's fees and costs. See *Twin Fires Inv., LLC* v. *Morgan Stanley Dean Witter & Co.,* 445 Mass. 411, 433 (2005). The Casavants may seek such fees and costs under the procedures established in *Fabre* v. *Walton,* 441 Mass. 9, 10-11 (2004).

*Conclusion.* As matters of law, Norwegian committed an unfair or deceptive act in violation of G. L. c. 93A, the Casavants suffered actual losses, and Norwegian's acts caused those losses. The judgment on the Casavants' c. 93A claim is reversed and the case is remanded for further proceedings. The remainder of the judgment is affirmed.

*So ordered.*