MARK CASAVANT & another[1] vs. NORWEGIAN CRUISE LINE LTD.

Worcester. December 6, 2010. - September 1, 2011.

Present: IRELAND, SPINA, CORDY, BOTSFORD, & GANTS, JJ.

*Consumer Protection Act,* Unfair or deceptive act, Damages, Demand letter. *Attorney General. Administrative Law,* Regulations.

A Superior Court judge erred in dismissing the claim of the plaintiff consumers against the defendant cruise line for damages under G. L. c. 93A for unfair and deceptive trade practices, where the evidence at trial plainly established that the defendant engaged in unfair or deceptive acts by violating applicable travel service regulations, i.e., by failing to disclose its refund policy, and, having violated the disclosure requirement, by failing to refund the payments made by the plaintiffs as canceling customers within thirty days, and caused the plaintiffs a loss, i.e., the lack of a prompt refund of the ticket price. [503-505]

In an appeal from the dismissal of a claim under G. L. c. 93A, this court concluded that a demand letter sent by the plaintiffs to the defendant satisfied the requirements of G. L. c. 93A, § 9(3), where the letter constituted fair notice of the plaintiffs' claim and enabled the defendant to make a reasonable tender of settlement. [505-507]

CIVIL ACTION commenced in the Superior Court Department on October 3, 2002.

The case was heard by *Bruce R. Henry,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Armand P. Mele,* of New York (*Barbara P. Lazaris* with him) for the defendant.

*John D. Deacon, Jr.,* for the plaintiffs.

CORDY, J. The plaintiffs, Mark and Tara Casavant, brought an action against Norwegian Cruise Line Ltd. (Norwegian), seeking a refund for two cruise tickets they purchased and cancelled, and damages under G. L. c. 93A for unfair and deceptive trade

---

[1] Tara Casavant.

practices. A Superior Court judge granted Norwegian's motion to dismiss the Casavants' complaint on the grounds of a forum selection clause in the "contract of passage." The Appeals Court reversed and remanded the case for trial. *Casavant* v. *Norwegian Cruise Line, Ltd.*, 63 Mass. App. Ct. 785 (2005). At trial, Norwegian agreed to provide a refund to the Casavants. The judge entered judgment for the Casavants on their contract claim, awarding a refund of the purchase price of their tickets, plus interest and costs, but found that Norwegian had not committed an unfair or deceptive act under G. L. c. 93A, and, even if it had, the Casavants suffered no loss as a result of such an act. The Casavants appealed from the decision on their claim under G. L. c. 93A (c. 93A claim). In reversing the judgment for Norwegian, the Appeals Court concluded that the Casavants had proved that Norwegian had committed an unfair trade act by failing to disclose the complete terms of its refund policy, and that the unfair act had caused them a loss because, had they known of the refund policy, the Casavants could have framed their cancellation of the cruise to come within it. *Casavant* v. *Norwegian Cruise Line, Ltd.*, 76 Mass. App. Ct. 73, 73-74, 77-78 (2009).

We granted Norwegian's application for further appellate review. We reverse the judgment on the c. 93A claim, but for reasons somewhat different from those of the Appeals Court.

1. *Background.* The material facts of this case were found by the trial judge. On October 25, 2000, the Casavants booked a seven-day round-trip cruise from Boston to Bermuda with Norwegian. The cruise was scheduled to depart Boston on September 16, 2001. The Casavants paid a deposit of $628 at the time of booking and the remaining balance on July 10, 2001. The total cost of the trip was $2,135.50. At the time of the purchase, the Casavants were informed that Norwegian imposed "cancellation fees," and that a cancellation zero to fourteen days prior to departure would result in a one hundred per cent cancellation fee. The Casavants received their tickets, which included a "contract of passage," on or about September 1, 2001.

After the terrorist attacks of September 11, 2001, the Casavants, fearful of taking a cruise that was scheduled to depart

from Boston on September 16, contacted Norwegian several times in an effort to reschedule it. Norwegian refused to reschedule their trip, deemed them to have cancelled their voyage, and refused to refund the price of the tickets. The Casavants subsequently retained counsel and sent Norwegian a demand letter pursuant to G. L. c. 93A, § 9 (3), dated August 22, 2002, claiming that they were entitled to a refund of the price of the tickets plus interest and attorney's fees based on a number of unfair and deceptive acts and practices on the part of Norwegian that violated G. L. c. 93A, §§ 2 and 9.

In its response to the demand letter, Norwegian informed the Casavants for the first time that it was Norwegian's policy "to provide passengers with a [one hundred per cent refund] if they have an objection to a provision in the [contract of passage]," and, further, because the Casavants had not objected to a specific provision in the contract of passage at the time they sought to reschedule (or cancel) their trip, their claim for a refund was properly denied. This refund policy was not contained in any of the materials, including the contract of passage, that the Casavants received prior to the scheduled trip.

The previously undisclosed refund policy was mentioned again in an affidavit filed by Norwegian in support of its motion to dismiss the Casavants' complaint. Jane E. Kilgour, manager of the passenger and crew claims department for Norwegian, stated in her affidavit that "[a]t all times relevant, it was, and remains, the policy of [Norwegian] to refund in full the fare paid by a passenger, without penalty, if that passenger wishes to cancel a cruise because of an objection to a provision contained in the Contract of Passage before the cruise in question begins."

The principal issues at trial were whether Norwegian committed a violation of 940 Code Mass. Regs. § 15.04(2)(e) (1996), the Attorney General's regulation concerning the sale of travel services, which requires the seller of such services to disclose "the complete terms of any cancellation or refund policy" before accepting payment for them[2]; and, if so, whether that violation

---

[2]Section 15.04(2)(e) of 940 Code Mass. Regs. (1996) provides in relevant part: "No seller of travel services may accept any payment in any form, either directly or indirectly, from a consumer for travel services, including but not limited to payment by cash, check, money order, credit card, debit card,

caused injury to the Casavants and constituted a violation of G. L. c. 93A.

2. *Discussion.* a. *Unfair or deceptive act or practice claim.* We review a judge's findings of fact under the clearly erroneous standard and his conclusions of law de novo. *Anastos* v. *Sable,* 443 Mass. 146, 149 (2004). "A ruling that conduct violates G. L. c. 93A is a legal, not a factual, determination." *R.W. Granger & Sons* v. *J & S Insulation, Inc.,* 435 Mass. 66, 73 (2001). Accord *Schwanbeck* v. *Federal-Mogul Corp.,* 31 Mass. App. Ct. 390, 414 (1991), *S.C.,* 412 Mass. 703 (1992) ("Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact . . . the boundaries of what may qualify for consideration as a [G. L.] c. 93A violation is a question of law . . .").

To warrant an award of damages under G. L. c. 93A, there must be a causal connection between the seller's deceptive act and the buyer's injury or loss. "If any person invades a consumer's legally protected interests, and if that invasion causes the consumer a loss — whether that loss be economic or noneconomic — the consumer is entitled to redress under our consumer protection statute." *Hershenow* v. *Enterprise Rent-A-Car Co. of Boston, Inc.,* 445 Mass. 790, 802 (2006) *(Hershenow).* "The plaintiffs need not show proof of actual reliance on a misrepresentation in order to recover damages under G. L. c. 93A[, but rather must show] 'a causal connection between the deception and the loss and that the loss was foreseeable as a result of the deception.' " (Citation omitted.) *Iannacchino* v. *Ford Motor Co.,* 451 Mass. 623, 630-631 n.12 (2008), quoting *International Fid. Ins. Co.* v. *Wilson,* 387 Mass. 841, 850 (1983).

Pursuant to G. L. c. 93A, § 2 (*c*), the "attorney general may make rules and regulations interpreting the provisions of subsection 2 (*a*)." See *Purity Supreme, Inc.* v. *Attorney Gen.,* 380 Mass. 762, 775 (1980). Chapter 15.00 of 940 Code Mass. Regs. (1996) defines and outlaws certain unfair or deceptive business

charge card, or authorization for electronic funds transfer or credit card charge, unless and until the seller of travel services has provided the consumer, either directly or through another seller of travel services, with the following information: . . . (e) the complete terms of any cancellation or refund policy of any seller of travel services that may apply to the consumer's purchase of travel services . . . ."

practices in the sale of travel services to the public, including, as noted, the acceptance of payment for travel services before disclosing "the complete terms of any cancellation or refund policy . . . that may apply to the consumer's purchase of travel services." 940 Code Mass. Regs. § 15.04(2)(e). The regulations also entitle a consumer to "cancel its purchase of travel services" where a seller of travel services has violated the refund policy disclosure requirements of § 15.04, and makes it a further unfair trade practice on such cancellation for the seller not to refund all payments to the consumer within thirty days. 940 Code Mass. Regs. § 15.04(4).

The trial judge found no violation of G. L. c. 93A, reasoning that the undisclosed refund policy would not have applied to the Casavants because their reason for cancelling the trip was based not on an objection to any specific term of the contract of passage but rather on their feelings of great discomfort about taking a cruise right after the terrorist attacks of September 11, 2001. Consequently, he concluded that the failure to comply with the regulation requiring disclosure (the unfair practice) did not cause the loss (the unrefunded ticket price) the Casavants claim they suffered.

While the judge's conclusions are understandable based on how extensively the testimony and arguments at trial focused on the Casavants' reason for cancellation, we conclude that they are incorrect as a matter of law. The evidence at trial plainly established that Norwegian violated the Attorney General's travel service regulations in two respects: first, it failed to disclose the refund policy; and second, having violated the disclosure requirement, it failed to refund the payments made by a cancelling customer within thirty days. These violations qualify as unfair or deceptive acts, and they caused the Casavants a loss: the lack of a prompt refund of the ticket price.

There is no unfairness in this result. As an enterprise engaged in the travel service business, Norwegian properly is held to have had knowledge of its obligations under the Attorney General's regulations specifically directed to that industry. It was established at trial that Norwegian had not disclosed its complete refund policy to customers in violation of those regulations. Such a failure would not entitle a customer who had purchased

tickets and taken a cruise to relief under G. L. c. 93A because of a lack of injury. See *Hershenow, supra* (consumer not entitled to redress where no loss has occurred). Such failure does, however, entitle customers who cancelled their trips to a refund within thirty days.

b. *Adequacy of the demand letter.* An issue raised in the parties' joint pretrial memorandum, but not raised in the Appeals Court and not addressed by either the trial judge or the Appeals Court, is the adequacy of the Casavants' demand letter, required by G. L. c. 93A, § 9 (3). Norwegian argues that the Casavants' c. 93A claim is procedurally barred because they failed to include the specific claim of a violation of 940 Code Mass. Regs. § 15.04 in their demand letter of August 22, 2002, or to send a second demand letter including such a claim after they learned from Norwegian (in response to their first demand letter) of the previously undisclosed refund policy.

Pursuant to G. L. c. 93A, § 2 (*a*), "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful." Under G. L. c. 93A, § 9, a private cause of action exists for consumers who suffer injury from unfair or deceptive acts or practices. *Hershenow, supra* at 796. General Laws c. 93A, § 9 (3), provides that "[a]t least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent."

One function of the demand letter "is to encourage negotiation and settlement by notifying prospective defendants of claims arising from allegedly unlawful conduct." *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 704 (1975). The other function of the demand letter "is to operate as a control on the amount of damages which the complainant can ultimately recover if he proves his case." *Id.* "It is therefore essential that the complainant define the injury suffered and the relief demanded in a manner that provides the prospective defendant with 'an opportunity to review the facts and the law involved to see if the requested relief should be granted or denied' and enables him to make 'a reasonable tender of settlement.' " *Spring* v. *Geriatric Auth. of*

*Holyoke*, 394 Mass. 274, 288 (1985), quoting *York* v. *Sullivan*, 369 Mass. 157, 162-163 (1975).

The demand letter required under G. L. c. 93A does not require claimants to set forth every specific statutory or regulatory violation alleged, so long as it fairly notifies the prospective respondent of the actions or practices of the respondent and the injury suffered by those actions. "Chapter 93A requires claimants to set out specifically any activities in their demand letter as to which they seek relief." *Clegg* v. *Butler*, 424 Mass. 413, 423 (1997). Specificity is required to describe the practices complained of, not the legal basis for the claim. See *Cohen* v. *Liberty Mut. Ins. Co.*, 41 Mass. App. Ct. 748, 756 (1996) (demand letter alleging unfair settlement practices sufficient even though violation of G. L. c. 176D, § 3 [9] [*f*], not specifically alleged). Cf. *Entrialgo* v. *Twin City Dodge, Inc.*, 368 Mass. 812, 813 (1975) (demand letter must list specific deceptive practices).

In this case, we conclude that the Casavants' letter of August 22, 2002, satisfied the requirements of G. L. c. 93A, § 9 (3). The letter was sent directly to Norwegian at least thirty days before filing a complaint. It complained that the Casavants had not received a refund of the ticket price paid for the cruise they attempted to reschedule and ultimately cancelled. It went on to list several alleged violations of G. L. c. 93A, §§ 2 and 9; and set forth the injury they had suffered, that is, the amount of the refund, plus interest, costs, and attorney's fees.[3] In view of Norwegian's response that it had a refund policy with which the Casavants had not complied, but which Norwegian knew had not been disclosed, it is reasonable to conclude that Norwegian was or should have been aware of its obligation to provide the

---

[3] The Casavants' demand letter complained that the Casavants were entitled to a refund, which they had not received, because (1) they never accepted the contract of passage; (2) several terms in the contract of passage were objectionable; (3) even if they had accepted the contract of passage, paragraph 23 demanded that the Casavants be allowed to reschedule their cruise; (4) Norwegian failed to file its fare with the appropriate Massachusetts agency; and (5) paragraphs 5 and 12 of the contract of passage, limiting Norwegian's liability for the death or injury of passengers, violated Federal law. Given the Attorney General's regulations and Norwegian's knowledge that it had not complied with them, the demand listing was sufficient. The fact that the Casavants may not have been aware of the Attorney General's regulations and listed those precise grounds is not dispositive.

Casavants with a refund. This constituted fair notice of the claim, and enabled Norwegian to make a reasonable tender of settlement. The purposes of the demand provision were sufficiently fulfilled.

3. *Conclusion.* For the reasons stated, the judgment for Norwegian on the Casavants' claim of unfair or deceptive acts under G. L. c. 93A is reversed, and the case is remanded for the entry of judgment for the Casavants and for a determination of their c. 93A damages, reasonable attorney's fees, and costs.

*So ordered.*