LYNCH, Circuit Judge, dissenting.
I disagree with my colleagues as to whether Kathy Dumont's complaint states a claim for a violation of chapter 93A, and I think the Massachusetts courts will as well. See Fed. R. Civ. P. 12(b)(6). In my view, the complaint fails to state a claim and so must be dismissed.
The majority opinion ably lays out the procedural history and facts of this case, which I do not repeat except as necessary.
I.
A district court's dismissal of a complaint under Rule 12(b)(6) is reviewed de novo. S.E.C. v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010) (en banc). A complaint survives dismissal under Rule 12(b)(6) if it has "enough facts to state a claim to relief that is plausible on its face," accepting as true the plaintiff's factual allegations and drawing reasonable inferences in the plaintiff's favor. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "If the factual allegations in the *44 complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Tambone, 597 F.3d at 442. This court may affirm a Rule 12(b)(6) dismissal "on any basis apparent in the record." Debnam v. FedEx Home Delivery, 766 F.3d 93, 96 (1st Cir. 2014) (quoting Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 237 n.11 (1st Cir. 2013) ).
Dumont's claim is that she purchased the coffee at issue because she thought it contained hazelnut, and that she was deceived by the label. In Massachusetts, chapter 93A bars "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2(a). Dumont acknowledges that, to plead her claim under chapter 93A, she must show "(1) a deceptive act or practice on the part of the seller; (2) an injury or loss suffered by the consumer; and (3) a causal connection between the seller's deceptive act or practice and the consumer's injury." Casavant v. Norwegian Cruise Line, Ltd., 76 Mass.App.Ct. 73, 919 N.E.2d 165, 169 (2009), aff'd, 460 Mass. 500, 952 N.E.2d 908 (2011). In my view, Dumont has not pleaded that there was a deceptive act or practice. The case should end here.
In this diversity jurisdiction case, we apply Massachusetts law. E.g. Shaulis v. Nordstrom, Inc., 865 F.3d 1, 6 (1st Cir. 2017). Under Massachusetts law, "an advertisement is deceptive when it has the capacity to mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted (i.e., to entice a reasonable consumer to purchase the product)." Aspinall v. Philip Morris Cos., 442 Mass. 381, 813 N.E.2d 476, 488 (2004) (emphasis added); see Edlow v. RBW, LLC, 688 F.3d 26, 39 (1st Cir. 2012) (applying this standard from Aspinall ). So, this standard "depends on the likely reaction of a reasonable consumer rather than an ignoramus." Aspinall, 813 N.E.2d at 487.
II.
Dumont cannot satisfy Massachusetts's reasonable consumer standard because her complaint has not demonstrated that the label would mislead a reasonable consumer under the totality of the circumstances here. I disagree with the majority that this is a "close" question. In my view, a reasonable consumer plainly could not view the phrase "Hazelnut Crème" as announcing the presence of actual hazelnut in a bag of coffee which also proclaims it is "100% Arabica Coffee." Indeed, a reasonable consumer, acting rationally, could not conclude that the label was deceptive. See Chervin v. Travelers Ins. Co., 448 Mass. 95, 858 N.E.2d 746, 759 (2006) ("[T]he boundaries of what may qualify for consideration as a [chapter] 93A violation is a question of law." (internal citation omitted) (quoting Schwanbeck v. Federal-Mogul Corp., 31 Mass.App.Ct. 390, 578 N.E.2d 789, 803-04 (1991) )).
As a preliminary matter, the front label plainly states that the package contains "100% Arabica Coffee." It does not say it contains anything other than coffee. The package here did not contain any misstatement of its contents, did not feature any pictures or illustrations of hazelnuts, and did not have any error in the ingredient list. There are two points. First, this is not a case of erroneous information being provided, but of accurate information, and that is relevant. See Ortiz v. Examworks, Inc., 470 Mass. 784, 26 N.E.3d 165, 174 (2015). And second, "100% Arabica Coffee" makes it clear only coffee is in the package.
The phrase "Hazelnut Crème," also on the front of the package, does not state a *45 nut or an organic item is in the coffee; the phrase is at most a reference to a flavor. "Crème" (including the grave accent) is not the same as "cream." Most consumers would know there was a difference, and if they did not, they could refer to the ingredient list, and they would not conclude a bag of dry, ground coffee contained cream.
A few dictionary definitions are helpful as to what is a reasonable consumer's understanding. "Cream" refers, first and foremost, to "[t]he oily or butyraceous part of milk, which gathers on the top when the milk is left undisturbed; by churning it is converted into butter." Cream, Oxford English Dictionary, available at https://www.oed.com/view/Entry/44024; see also Webster's Third New International Dictionary 534 (1993) (defining "cream" first as "the yellowish part of milk containing from 18 to about 40 percent butterfat that rises to the surface on standing or is separated by centrifugal force"). "Crème" has distinct meanings, both in the dictionary and in common parlance: it is generally defined as a "cream or cream sauce as used in cookery" or "a sweet liqueur," with the latter "usu[ually] used with the flavor specified." Webster's Third New International Dictionary 534 (1993); see also Crème, Oxford English Dictionary, available at https://www.oed.com/view/Entry/44191 (defining "crème" as (a) "[a] cream or custard" or (b) "[a] name for various syrupy liqueurs").
There is also the fact that the term "Hazelnut" was used as a modifier for "Crème" on the front of the package. So, a reasonable consumer would not think that hazelnuts were present, and that is true even if a consumer improbably thought cream was present in "100% Arabica Coffee."
In the context of a package of ground, dry coffee, as in this case, the two words, "Hazelnut Crème," together plainly state the flavoring of the coffee. They do not state that the coffee contains hazelnuts, and the words are not deceptive. Reasonable consumers, whether erudite or not, would not think this phrasing means that the coffee actually contained hazelnuts. The majority draws a mistaken analogy to a "hazelnut cake." But a cake, unlike "100% Arabica Coffee," is made up of many ingredients. Most consumers would not approach the label for a cake, or for any sort of nut butter, the same way they would approach the label of a package of ground coffee beans that said "100% Arabica Coffee."
Possible confusion by some consumers does not render a notice unfair or deceptive. See Ortiz, 26 N.E.3d at 174. Even if Dumont was confused as to the matter of hazelnuts being in the contents, the only reasonable thing would be for her to turn the package to look at the ingredient list. That is, a reasonable consumer particularly interested in the presence of actual hazelnut (or, for that matter, actual dairy-based cream or crème or some form of liqueur)[4] in their ground coffee would have *46 looked at the list of ingredients on the back of the package. This is particularly true for a compound flavor term such as "Hazelnut Crème."
The majority opinion seems to equate the "Hazelnut Crème"-flavored coffee here to a straightforward "Hazelnut"-flavored coffee cited in the complaint (the front label of which contained illustrations of hazelnuts) but this equivalence is wrong. Put simply, even if the former term was arguably ambiguous, the latter was not. "[C]onsumers who interpret ambiguous statements in ... [a] debatable manner do so unreasonably if an ingredient label would set them straight." In re: 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig., 275 F. Supp. 3d 910, 922 (N.D. Ill. 2017) (internal citations omitted). The correct and complete ingredient label here would have set Dumont straight, even if she had some initial confusion.[5]
Alleged industry labeling conventions also cannot save Dumont's chapter 93A complaint. The issue under chapter 93A is not whether another packaging choice could have been more precise about the ingredients or flavor of the coffee; surely there are many such choices, perhaps including a package stating on the front that "the product is naturally or artificially flavored." The issue before us, instead is whether a reasonable consumer would have been misled by the label as it was. The majority's implicit argument is that a consumer could have been lulled into a sense of security by general industry conventions stemming from the federal food labeling requirements. The premise is wrong. Further, I do not see any such reliance as being reasonable in this context for a compound ground coffee flavor such as "Hazelnut Crème." Dumont's complaint fails to state a claim under chapter 93A.[6]
*47 * * *
The dissent does exactly what judges are supposed to do: define the parameters of the law. The Supreme Judicial Court of Massachusetts affirms dismissal of chapter 93A claims that do not state a claim. See, e.g., Ortiz, 26 N.E.3d at 174. The federal courts should do no less. We have done so before. See Edlow, 688 F.3d at 39. Imposing on food producers the costs of defending meritless labeling litigation will have the effect of driving up prices for consumers. It is the dissent that is concerned with harm to the consumer.
For the foregoing reasons, I respectfully dissent.

Beyond general points drawn from federal labeling regulations about the "characterizing flavor" in a food product, 21 C.F.R. § 101.22(i), the complaint does not explain why Dumont apparently did not expect the coffee to contain "Crème" of any sort but did expect the coffee to contain the modifying term, "Hazelnut." Under the federal regulation, both of these flavors could perhaps be seen as "characterizing flavor[s]." Id. ("If the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s),... such flavor shall be considered the characterizing flavor."); see id. § 101.22(i)(3)(iii) (discussing multiple characterizing flavors in a product). Or, more likely, "Hazelnut Crème" is simply "a blend of flavors with no primary recognizable flavor" under the relevant regulation. Id.
Also, Dumont's claim is not about whether the flavoring in the coffee is natural or artificial, but whether the coffee contains actual hazelnuts. (Her complaint says that she purchased the package based on her "reasonable belief that the Coffee contained Hazelnut," not that it was all-natural.) So, her interest in the label is presumably restricted to what it reveals about the presence of hazelnuts.

I recognize that "[o]ne can violate [chapter 93A] ... by failing to disclose to a buyer a fact that might have influenced the buyer to refrain from the purchase," Greenery Rehab. Grp., Inc. v. Antaramian, 36 Mass.App.Ct. 73, 628 N.E.2d 1291, 1294 (1994), but here all of the ingredients were clearly and accurately disclosed. There was no failure of disclosure.

I need not consider the Rule 9(b) pleading standard or preemption, because I view Rule 12(b)(6) as dispositive here.
As to Dumont's argument that her complaint should not have been dismissed without leave to amend, this should fail. Review is for abuse of discretion. Hamilton v. Partners Healthcare Sys., Inc., 879 F.3d 407, 414 (1st Cir. 2018). Under Rule 15(a), leave of court to amend a complaint generally should be "freely give[n] ... when justice so requires," Fed R. Civ. P. 15(a)(2), but "[t]his does not mean ... that a trial court must mindlessly grant every request for leave to amend," Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 58 (1st Cir. 2006). A request usually must be made by motion. See Fed. R. Civ. P. 7(b)(1). There was no motion made here. Instead, a footnote in Dumont's Objection and Memorandum in Opposition to Motion to Dismiss stated in relevant part: "To the extent the Court finds any part of Defendan[ts'] motion persuasive, Plaintiff respectfully asks for leave to amend."
The district court cannot have abused its discretion, because Dumont did not properly seek leave to amend and no exceptional circumstances exist to excuse this failure. Her cursory, contingent request for leave to amend, not made in a motion but in another filing, is not a proper motion for leave to amend. See Gray v. Evercore Restructuring L.L.C., 544 F.3d 320, 327 (1st Cir. 2008) (holding that the statement, "in the event that the Court finds that the Amended Complaint fails to state a claim, Plaintiff requests leave to replead" in an opposition motion "does not constitute a motion to amend a complaint"). This has been a consistent First Circuit rule. Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc., 778 F.3d 228, 247 (1st Cir. 2015) ; Wayne Inv., Inc. v. Gulf Oil Corp., 739 F.2d 11, 15 (1st Cir. 1984). And "allowing plaintiffs to hedge their bets by adding a cursory contingent request in an opposition to a motion to dismiss would encourage plaintiffs to test the mettle of successive complaints and freely amend under Rule 15(a) if their original strategic choices prove inadvisable." Fisher v. Kadant, Inc., 589 F.3d 505, 510 (1st Cir. 2009).
Dumont was "put on notice of the deficiencies in the complaint by the motion to dismiss. If [she] had something relevant to add, [she] should have moved to add it then." Abiomed, 778 F.3d at 247.